UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS,<br><br>           Plaintiff,<br><br>      v.<br><br>R. PARSELLS,<br><br>           Defendant. | No. 2:22-cv-0514 KJM KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

      Plaintiff is a former state prisoner, proceeding pro se and in forma pauperis, with this civil rights action seeking relief pursuant to 42 U.S.C. § 1983. Defendant's motion for terminating sanctions is before the court. As discussed below, plaintiff's late objection to the location of the deposition is overruled, and it is recommended that defendant's motion be granted.

<u>Background</u>

      This action was filed on March 21, 2022, while plaintiff was in state custody. Plaintiff stated cognizable Eighth Amendment claims against defendant Parsells. (ECF No. 8.)

      On October 24, 2022, the court set a discovery deadline for February 17, 2023. (ECF No. 32.) The parties were cautioned that the failure of any party to comply with the Federal Rules of Civil Procedure or the Local Rules of Court may result in the imposition of sanctions including, but not limited to, dismissal of the action or entry of default. (ECF No. 32 at 8, citing Fed. R. Civ. P. 41(b).)

1

1    Defendant properly noticed plaintiff's deposition for February 10, 2023.  On February 2,
2    2023, plaintiff advised counsel that plaintiff was unavailable for deposition on February 10, 2023,
3    "due to conflicting court, parole, and work obligations." (ECF No. 39 at 8.)  The parties mutually
4    agreed to reschedule the deposition for February 28, 2023. (Id.)  Defendant sought and was
5    granted an extension of the discovery deadline to March 20, 2023. (ECF No. 36.)

6    On March 1, 2023, defendant again sought modification of the scheduling order, stating
7    that due to an inadvertent error on defendant's part, the notice of deposition for February 28,
8    2023, was not properly served on plaintiff and required rescheduling.  The parties conferred, and
9    mutually agreed to reschedule plaintiff's deposition for April 11, 2023. (ECF No. 37-1 at 2.)
10   Defendant's motion to modify was granted, and the discovery deadline was extended to April 20,
11   2023. (ECF No. 38.)

12   Plaintiff's deposition was properly noticed for Tuesday, April 11, 2023. (ECF No. 39 at
13   12-14.)  Plaintiff raised no objection and did not subsequently notify counsel that the April 11,
14   2023 date would not work. (ECF No. 39 at 9.)

15   Plaintiff did not appear on April 11, 2023. (ECF No. 41-2 at 2.)  The deposition went
16   forward, and a record of plaintiff's non-appearance was made. (ECF No. 39 at 9.)

17   On April 19, 2023, defendant filed a motion to compel plaintiff's deposition and to again
18   extend the discovery deadline based on plaintiff's failure to appear at the April 11, 2023
19   deposition. (ECF No. 39.)  The court found good cause to extend the discovery deadline and
20   ordered plaintiff to appear for deposition, to be re-noticed within sixty days. (ECF No. 40.)
21   Plaintiff was cautioned that failure to attend and cooperate in the re-noticed deposition would
22   result in a recommendation that this action be dismissed. (ECF No. 40 at 2.)

23   On May 25, 2023, defendant's counsel emailed plaintiff and offered new dates for
24   plaintiff's deposition. (ECF No. 41-2 at 6.)  Plaintiff responded that "right now tuesday June 13th
25   looks ok." (Id.)

26   Plaintiff's deposition was properly re-noticed for June 13, 2023. (ECF No. 41-2 at 10.)
27   On June 13, 2023, plaintiff's deposition went forward, and plaintiff did not appear; a record of his
28   non-appearance was made. (ECF No. 41-2 at 15-22.)

On June 20, 2023, defendant filed the instant motion for terminating sanctions. (ECF No. 41.) Plaintiff filed an opposition while his request for extension of time to file an opposition was pending. (ECF No. 43.) After the court granted the extension, plaintiff filed a supplemental opposition on August 3, 2023. (ECF No. 45.) On August 15, 2023, defendant filed a reply. (ECF No. 46.) On August 24, 2023, plaintiff filed a surreply. (ECF No. 47.)

I. Defendant's Motion for Terminating Sanctions

Defendant moves for terminating sanctions against plaintiff for his willful failure to attend his properly noticed depositions. (ECF No. 41-1.) Local Rule 230(l) contemplates the filing of a motion, an opposition, and a reply. Id. However, because plaintiff is proceeding without counsel, the undersigned also considered plaintiff's supplemental opposition and surreply. Plaintiff did not provide a declaration, and none of plaintiff's filings were signed under penalty of perjury.

Legal Standards

Rule 41(b) of the Federal Rules of Civil Procedure authorizes dismissal for a party's failure to comply with court orders. Id. District courts also have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." Thompson v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986). A court may also impose sanctions, including the sanction of dismissal, or terminating sanctions, on a party who does not comply with discovery orders. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

"The standards governing dismissal for failure to obey a court order are basically the same" under Rule 37(b) and Rule 41(b). Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987); see Yourish v. California Amplifier, 191 F.3d 983, 987 (9th Cir. 1999) (dismissal under Rule 41(b) is "closely analogous" to the imposition of terminating sanctions under Rule 37(b)); Toth v. Trans World Airlines, Inc., 862 F.2d 1381, 1385 n.1 (9th Cir. 1988) ("The standards governing dismissal for failure to obey court orders are the same under Fed. R. Civ. P. 37(b)(2)(C) or 41(b).").

However, when a party seeks terminating sanctions based on a violation of Rule 37(b), the court's "range of discretion is narrowed and the losing party's noncompliance must be due to willfulness, fault, or bad faith." Payne v. Exxon Corp., 121 F.3d 503, 507 (9th Cir. 1997)

(quoting Henry v. Gill Indust., 983 F.2d 943, 946 (9th Cir. 1993)); see also In re Exxon Valdez, 102 F.3d 429, 432 (9th Cir. 1996) (dismissal under Rule 37(b) requires a threshold showing that the violation is due to willfulness, bad faith, or fault of the non-moving party).

If the moving party meets such threshold showing, the court applies a "five-part test, with three subparts to the fifth part" to determine whether terminating sanctions under Rule 37(b)(2) are just:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

Connecticut General Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007) (footnote omitted).[1]  "The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case dispositive sanctions." Id. at 1096.  Such five part test "is not mechanical," but rather "provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow." Id.

Discussion

Was plaintiff's failure to appear for depositions willful?

Defendant properly noticed plaintiff's deposition on three occasions, and the court evaluates plaintiff's alleged misconduct in connection with the last two.  The court may consider a party's pro se status "in evaluating the willfulness of discovery violations and the failure to obey court orders and in weighing the other factors regarding dismissal, but pro se status does not excuse intentional noncompliance with discovery rules and court orders." Sanchez v. Rodriguez, 298 F.R.D. 460, 470 (C.D. Cal. 2014) (collecting cases).  "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003) (citation omitted); see also Sanchez, 298 F.R.D. at 463 (noting that willfulness, bad faith, and fault requirement "does not require

---

[1] These are the same five factors considered under Rule 41(b).  Sanchez, 298 F.R.D. at 470.

4

wrongful intent"). In evaluating the propriety of sanctions, the Court considers "all incidents of a party's misconduct." Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1411 (9th Cir. 1990), cert. denied, 498 U.S. 1109 (1991).

As discussed below, the undersigned finds that plaintiff failed to demonstrate that circumstances beyond his control prevented his compliance with two properly noticed depositions, demonstrating his willful disregard for discovery rules and the court's April 20, 2023 order.

### April 11, 2023 Deposition

Although plaintiff agreed to the April 11, 2023 date for his deposition, plaintiff failed to appear, without notice to defendant's counsel, either before or after the deposition. In his unverified opposition, signed July 20, 2023, plaintiff claims he was scheduled to work on April 11, 2023, is "on call 24 hours a day 7 days a week," and his job is a condition of parole and a "priority due to it being in the medical field." (ECF No. 43 at 1.) But plaintiff provided no evidence to support such claims, and failed to explain his failure to notify counsel that plaintiff would or could not appear on April 11, 2023, either before or after the deposition. The undersigned finds plaintiff's failure to appear for deposition on April 11, 2023, was based on circumstances under plaintiff's control.

### June 13, 2023 Deposition

Plaintiff's opposition makes clear that he failed to attend the June 13, 2023 deposition because defendant's counsel, who was appearing remotely, refused to validate or pay for plaintiff's parking. The undersigned finds that plaintiff's failure to appear at the June 13, 2023 deposition was due to circumstances within plaintiff's control.

The June 13, 2023 deposition was noticed to begin at 10:00 a.m. Defendant's counsel filed a declaration stating that at 10:06 a.m. that morning, plaintiff called defendant's counsel to confirm the location of the deposition, and asked whether validated parking was available. (ECF No. 41-2 at 3.) Counsel responded that he was appearing remotely and did not know whether the location offered validated parking, but would ask Rick Boling, the technician who was on site. (Id.) At 10:41 a.m., plaintiff again called counsel and said he was driving around in the vicinity

of "Highland and Sunset," but that a street was blocked off due to a closure; counsel consulted an online map and told plaintiff about nearby streets as well as nearby restaurants and businesses to assist him in locating the building. (Id.) Counsel also informed plaintiff that Mr. Boling was unsure whether parking could be validated at the site.

Subsequently, defendant's counsel had Mr. Boling appear before the court reporter and, after being duly sworn, Mr. Boling testified that plaintiff arrived at the building at around 10:58 a.m. (ECF No. 41-2 at 19-20.) Boling and plaintiff went to the front desk at SparkSpaces where they were informed that parking is not validated. (Id. at 20.) Boling informed plaintiff that they needed to go upstairs for the meeting, but plaintiff responded, "We're not going upstairs until I get my parking validated." (Id.) Plaintiff then went to the other front desk where he was again told parking is not validated. Mr. Boling called defendant's counsel, who asked to speak with plaintiff. Boling gave plaintiff Boling's phone; after the conversation with counsel, plaintiff returned the phone and left the building. (Id.) In his declaration, defendant's counsel set forth the details of his conversation with plaintiff:

> Plaintiff told me that he was under the impression that parking would be validated. He stated he did not have the $20 required for parking. I asked Plaintiff where he parked, and he informed me that he parked in the garage associated with Spark Spaces, the host location for the deposition. Plaintiff also stated that parking is $2.50 per 15 minutes, with a maximum of $20. I suggested to Plaintiff that the sooner the deposition gets started it may save him money for parking. Plaintiff stated that Defendant would need to "reschedule" and make sure he does not get charged for parking at the next available deposition. I informed Plaintiff that parking is not Defendant's responsibility. I asked Plaintiff specifically whether he would attend and participate in the deposition. Plaintiff stated no, not unless parking is paid for or there is validated parking where he will not be charged to park. Plaintiff then handed the phone to Mr. Boling and left the building.

(ECF No. 41-2 at 3-4.)

In opposition, plaintiff argues that he informed counsel that plaintiff did not have any money to pay for parking and that there are no rules or laws requiring plaintiff to pay anything to attend deposition or request his parking be validated before a deposition. (ECF No. 43 at 2.)

Plaintiff's failure to appear at the deposition was within plaintiff's control. Prior to the deposition, plaintiff could have asked defendant's counsel whether parking was provided at the

6

deposition location and informed counsel of plaintiff's inability to pay for parking. Instead, plaintiff expected parking would be provided, insisted that someone validate or pay for plaintiff's parking, and then left the building despite the court's order requiring him to attend and cooperate in the deposition. While plaintiff adamantly insists defendant was required to provide parking, defendant is correct that no Federal Rule of Civil Procedure requires the payment of parking to attend a party's deposition. Moreover, plaintiff's representation that he will not attend and participate in a deposition unless defendant provides for plaintiff's parking further demonstrates his willfulness. Plaintiff cites no legal authority supporting his view that defendant must provide for parking at plaintiff's properly noticed deposition.[2]

Further, plaintiff has been on parole since at least July 19, 2022 (ECF No. 23), and claims he has a job in the medical field. Plaintiff provides no evidence of his inability to pay $20.00 for parking.

Therefore, the court finds plaintiff's refusal to attend the re-noticed deposition to be willful and was plaintiff's fault.

<u>Do the five factors support terminating sanctions?</u>

The court next evaluates whether the five factors weigh in favor of imposing terminating sanctions. Such factors provide a "way for a . . . judge to think about what to do," rather than "a series of conditions precedent before the judge can do anything." In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d 1217, 1226 (9th Cir. 2006), quoting Valley Eng'rs v. Electric Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998). "The most critical factor to be considered in

---

[2] Even plaintiffs proceeding in forma pauperis are responsible for paying certain costs of civil litigation. See Tedder v. Odel, 890 F.2d 210, 211-12 (9th Cir. 1989) (finding in forma pauperis status does not waive payment of fees or expenses for witnesses, noting "the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress."). The Ninth Circuit has also held that "a plaintiff proceeding in forma pauperis is not protected from the taxation of costs to which a prevailing defendant is entitled." Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994) (per curiam). One district court has held that a plaintiff's "in forma pauperis status does not entitle him to a waiver of any of the costs associated with [a deposition]; instead, he must pay the necessary deposition officer fee, court reporter fee, and costs for a transcript." Shepherd v. Neuschmid, 2021 WL 1172915, at *7 (E.D. Cal. Mar. 29, 2021). The Third Circuit has held that "[a]s a general rule, indigent litigants bear their own litigation expenses" Tabron v. Grace, 6 F.3d 147, 159-60 (3d Cir. 1993).

case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" Conn. Gen. Life Ins. Co., 482 F.3d at 1097 (quoting Valley Eng'rs, 158 F.3d at 1057 (internal quotes and citation omitted); see also Wanderer v. Johnston, 910 F2d 652, 656 (9th Cir. 1990) (the amount of prejudice resulting from the discovery violations and the availability of less drastic sanctions are said to be "key factors").

First, the public's interest in expeditious resolution of litigation favors dismissal. This action was filed on March 21, 2022, and the first scheduling order issued in October of 2022. The resolution of this action has been delayed for many months due to difficulties in scheduling plaintiff's deposition and then plaintiff's repeated failure to attend his deposition. Plaintiff's actions have prevented this case from proceeding in a timely fashion.

Turning to the second factor, the court's need to manage its docket favors dismissal. District courts must be able to manage their dockets "without being subject to endless non-compliance with case management orders." In re PPA, 460 F.3d at 1227. The court has spent additional time addressing the issue of plaintiff's failure to attend his depositions. Moreover, prior efforts to schedule plaintiff's deposition have required multiple modifications of the court's scheduling order, and plaintiff still has not been deposed.

Evaluation of the third factor demonstrates that defendant has been prejudiced by plaintiff's repeated failure to attend his deposition. In addition to the attendant costs of holding two failed depositions, defendant points out that in responses to defendant's written discovery requests, served on January 1, 2023, plaintiff stated he was unable to provide substantive responses due to not having access to his medical records. (ECF No. 41-2 at 1-2.) As of June 19, 2023, plaintiff had not supplemented any written responses. (Id. at 2.) Thus, plaintiff's repeated failure to appear for deposition deprived defendant's counsel of the ability to ask plaintiff about the facts that form the basis of his claims or the facts that support potential defenses. (ECF No. 41-1 at 6.) Further, because plaintiff has been released from custody, absent deposition testimony, defendant is also unable to investigate plaintiff's claims of lasting injuries and pain and suffering related to plaintiff's claims of head and neck injuries. (Id.)

It has been almost one year since the court issued its first discovery order, and it appears defendant has been unable to obtain any meaningful discovery from plaintiff. Such unreasonable delay weighs in favor of dismissal since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. See Anderson v. Air West, 542 F.2d 522, 524 (9th Cir. 1976) ("The law presumes injury from unreasonable delay."). It is also prejudicial to defendant to allow plaintiff to continue prosecuting this action while depriving defendant of the right to conduct meaningful discovery.

The fourth factor, the public policy favoring disposition of cases on their merits, does not favor dismissal. But this factor is outweighed by the factors in favor of dismissal discussed herein. See Leon v. IDX Sys. Corp., 464 F.3d 951, 960-61 (9th Cir. 2006) (policy favoring merits adjudication is not, without more, sufficient to outweigh other factors).

In connection with the fifth factor, the court must consider whether lesser sanctions are appropriate. In this case, the undersigned finds that less drastic sanctions are not available.

The court previously imposed a lesser sanction when it ordered plaintiff to appear and cooperate in the re-noticed deposition. The court warned plaintiff that his failure to attend and cooperate in the re-noticed deposition would result in a recommendation that this action be dismissed. (ECF No. 40 at 2.) Despite such order, plaintiff did not attend the second deposition simply because he believed defendant was required to provide plaintiff with parking. In his opposition, plaintiff claims that he "left since deposition notice says deposition can be rescheduled upon any discrepancies," and he "chose to listen to deposition motion [sic] that says deposition can be rescheduled if there are any issues preventing deposition from taking place."[3] (ECF No. 43 at 2, 3.) In his supplemental opposition, plaintiff now claims he is entitled to confer with an attorney before answering any questions, and complains he was not provided counsel

---

[3] Nothing in the deposition notices claimed the deposition could be rescheduled upon any discrepancies or if there are any issues preventing the deposition from taking place. (ECF Nos. 39 at 12-13; 41-2 at 10.) Rather, both deposition notices advised plaintiff that he was required to appear and warned that his failure to attend and cooperate "may result in court-ordered sanctions which can include expenses of Defendant's counsel or even dismissal of this action." (Id.) Further, plaintiff's failed argument ignores the court's order that plaintiff attend and cooperate in the re-noticed deposition.

despite having a mental health diagnosis. (ECF No. 45 at 1.) Plaintiff's statements suggest that ordering plaintiff to cooperate and sit for his deposition a third time would be futile because plaintiff does not take seriously his obligation to cooperate in the discovery process.[4] Indeed, plaintiff simply failed to appear at the April 11, 2023 deposition without notice either before or after. Given plaintiff's view that depositions can "just be rescheduled," even after this court ordered him to appear and cooperate, it is not clear such unannounced failure to appear will not occur again.

Importantly, the tenor of plaintiff's filings also support this court's findings. Plaintiff calls counsel a "clown ass" for failing to provide for plaintiff's parking in advance of the deposition, despite plaintiff failing to raise any such concern with counsel ahead of time, and plaintiff repeatedly accuses counsel of lying, but provides no competent evidence in support. (ECF Nos. 43 at 1, 2; 47 at 1.) Plaintiff does not address his own failure to comply with this court's order to attend and cooperate in the deposition. Plaintiff's "pro se status does not excuse intentional noncompliance with discovery rules and court orders." Sanchez, 298 F.R.D. at 470.

Finally, the court has considered recommending monetary sanctions rather than terminating sanctions, but finds that under the circumstances, ordering monetary sanctions would be ineffective given plaintiff's indigency. Plaintiff was granted leave to proceed in forma pauperis based on his showing of indigency. Plaintiff is on parole, and imposing monetary sanctions would be futile as he does not have the ability to pay. Indeed, plaintiff states that "defense can't expect a[n] ex-convict to be able to pay anything after being in prison for 10 fucking years." (ECF No. 43 at 2.) In fact, judges in the Central District of California also found that imposing monetary sanctions on plaintiff would be inappropriate given plaintiff's indigency. Lance Williams v. Farley, 2023 WL 3802161, at *5-6 (C.D. Cal. May 3, 2023), report and recommendation adopted, 2023 WL 3792629 (C.D. Cal. June 1, 2023)(finding that while plaintiff

---

[4] Plaintiff does not have a constitutional right to counsel in this action. Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), withdrawn in part on other grounds, 154 F.3d 952 (9th Cir. 1998). Plaintiff brought this civil action and is responsible for diligently prosecuting the action. Defendant is entitled to conduct discovery into facts relevant to plaintiff's claims and defendant's putative defenses to such claims, and to take plaintiff's deposition. Fed. R. Civ. P. 26, 30.

should be subject to terminating sanctions based on his "repeated failure to timely schedule and meaningfully participate in his deposition in direct violation of an explicit Court order," imposing monetary sanctions would be ineffective.).[5]  Plaintiff's responsive filings in this case also demonstrate that imposing monetary sanctions would not motivate plaintiff to attend or cooperate in his deposition.  Therefore, the undersigned finds that the lesser sanction of monetary sanctions is not available.

For all of the above reasons, the undersigned lacks confidence that plaintiff will appear and cooperate if a third deposition were to be ordered, and finds that the amount of prejudice resulting from the above discovery violations and the lack of less drastic sanctions weigh heavily in favor of granting the motion for terminating sanctions.  The undersigned recommends that defendant's motion for terminating sanctions be granted.

II. Monetary Sanctions

A court that imposes sanctions pursuant to Rule 37(b)(2)(A) "must" order the sanctioned party to pay the reasonable expenses, including attorney's fees, incurred by the other party due to the noncompliance with the discovery order "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).  While plaintiff's failure to comply with discovery was not substantially justified, the undersigned declines to recommend imposition of monetary sanctions under Rule 37(b)(2)(C) because such order would be unjust in light of plaintiff's indigency.

III. Plaintiff's Objection re Deposition Location

In his supplemental opposition, plaintiff objects to the location of the deposition.  (ECF No. 45.)  Plaintiff contends that his deposition should have been noticed for San Bernardino County where he resides, claims he never agreed to be deposed in Los Angeles County, and was never asked and a mutual agreement was not made.  (ECF No. 45 at 1.)  The undersigned addresses such belated objection before turning to the motion for terminating sanctions.

---

[5] A court may take judicial notice of court records.  See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

The Federal Rules do not restrict the place for taking a party's deposition. Fed. R. Civ. P. 30. "A party may unilaterally choose the place for deposing an opposing party, subject to the granting of a protective order by the Court pursuant to Rule 26(c)(2), Fed. R. Civ. P., designating a different place." Cadent Ltd. v. 3M Unitek Corp., 232 F.R.D. 625, 628 (C.D. Cal. 2005) (quoting Turner v. Prudential Ins. Co. of Am., 119 F.R.D. 381, 383 (M.D. N.C. 1988) (internal quotation marks omitted)). "[P]laintiff is not without remedy against being seriously inconvenienced by appearing at the site chosen by defendants. He may object, upon motion seasonably made, and may show cause why a deposition should not be taken at the designated place." Barili v. Bianchi, 6 F.R.D. 350, 352 (N.D. Cal. 1946). However, Rule 37(d) provides that a party's failure to appear at his own deposition "is not excused on the ground that the discovery was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2); see also Paige v. Consumer Programs, Inc., 248 F.R.D. 272, 276-77 (C.D. Cal. 2008) (imposing monetary sanctions where plaintiff believed he had good cause not to appear for his deposition but did not file a motion for protective order under Rule 26(c)).

Here, plaintiff did not seek a protective order as to the deposition's location prior to the properly noticed deposition. Thus, plaintiff's belated objection is overruled.

Nevertheless, had plaintiff timely sought such protective order, such motion would not be well-taken. Defendant's counsel declares that the location of the deposition was selected as close to plaintiff's address of record that the court reporting agency could secure, and an in-person conference room was chosen to ensure a reliable videoconference connection so the parties could hear each other. (ECF No. 41-2 at 2.) Plaintiff's address of record is a post office box in Tarzana, California, and maps show that Tarzana is 17.2 miles away from 7080 Hollywood Blvd., Los Angeles, California.[6] Having to travel less than twenty miles is not unreasonable, even considering Los Angeles traffic. See Reddy v. Precyse Sols. LLC, 2015 WL 2081429, at *3

////

---

[6] The search was conducted on google maps. <https://www.google.com/maps> (accessed Oct. 17, 2023).

(E.D. Cal. May 4, 2015) ("Requiring Plaintiff to drive fifty miles to attend a deposition does not seem unduly burdensome or oppressive.")

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that plaintiff's objection to the location of the deposition (ECF No. 45) is overruled; and

IT IS RECOMMENDED that:

1. Defendant's motion for terminating sanctions (ECF No. 41) be granted; and

2. This action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 23, 2023

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/will0514.term